| | | |
|---|---|---|
| **UNITED STATES DISTRICT COURT** | | **EASTERN DISTRICT OF TEXAS** |

HOWARD GREGG DIAMOND, §
§
Movant, §
§
*versus* §        CIVIL ACTION NO. 4:20-CV-397
§
§
UNITED STATES OF AMERICA, §
§
Respondent. §

## MEMORANDUM ORDER OVERRULING OBJECTIONS AND ADOPTING THE MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Movant, Howard Gregg Diamond ("Diamond"), a prisoner currently confined at USP Beaumont, filed a motion to vacate, set aside or correct sentence pursuant to 28 U.S.C. § 2255. Movant is represented by counsel, Gary Udashen.

The court has received and considered the Report and Recommendation ("the Report") of the magistrate judge filed pursuant to such order, along with the record, and pleadings (#82). The magistrate judge concluded that because Diamond failed to carry his burden under *Strickland v. Washington*, 466 U.S. 668, 687 (1984), his ineffective assistance of counsel claim cannot survive. The Report recommends that Diamond's Motion to Vacate, Set Aside, or Correct Sentence be denied and the case be dismissed with prejudice. The Report also recommends that a Certificate of Appealability be denied. Diamond filed Objections to the Report (#83). This requires a *de novo* review of the objections in relation to the pleadings and applicable law. *See* FED. R. CIV. P. 72(b).

In his Objections, Diamond maintains he is entitled to relief under § 2255 because he received ineffective assistance of counsel during the plea bargaining process. He objects to several

findings of fact of the magistrate judge as well as the magistrate judge's finding concerning prejudice.  The court will take both in turn.

### A.    Credibility Determinations

Diamond argues that several findings of the magistrate judge are contrary to the record and the law.  Objections (#83 at 33-42).[1]  These disputed findings of fact rest on the magistrate judge's determination of the credibility of the witnesses presented at the evidentiary hearing.  Thus, at the heart of each of Diamond's objections is a contention that his expert witness, Dr. Lindsey Thomas ("Thomas"), her affidavit, and the assertions in his pleadings are more credible than contrary assertions of fact by Diamond's trial counsel, Peter Schulte ("Schulte").  Diamond asks the court to reconsider the evidence, reject the magistrate judge's credibility determinations, and conclude that Thomas is more credible than Schulte and/or the evidence in the record.

Under 28 U.S.C. § 636(b)(1)(B), a district judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court," of "dispositive" motions.  *See United States v. Raddatz*, 447 U.S. 667, 673 (1980).  The statute further provides:

> A judge of the court shall make a de novo *determination* of those portions of the report or specified proposed findings or recommendations to which objection is made.  A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate.  The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions.

---

[1]    The court notes that some of these "findings" are from the recitation of the factual background taken from the offense conduct as outlined in the Presentence Investigation Report ("PSR").  Diamond did not object to the offense conduct described in the PSR. Crim. ECF. Dkt. #89 at 4-8, §§ 9-22.

28 U.S.C. § 636(b)(1)(c) (emphases added).  By its terms, § 636(b)(1)(c) grants the district court broad discretion to accept or reject the magistrate judge's findings; however, this discretion is not unlimited.

Under the terms of the statute, the district court may *accept* the credibility determinations of the magistrate judge after reviewing the record, without conducting an independent hearing. *See United States v. Scribner*, 832 F.3d 252, 260 (5th Cir. 2016) (vacating the district court's denial of a § 2255 motion because the decision was based on implicit rejection of the magistrate's credibility finding without a hearing; explaining that, on remand, the district court was free to accept the magistrate's credibility determination without holding a hearing, or in the alternative, reject the magistrate's determination and come to its own conclusion after a hearing); *Louis v. Blackburn*, 630 F.2d 1105, 1009 (5th Cir. 1980) ("a district judge may accept a magistrate's findings concerning credibility and not violate due process."); *see also United States v. Marshall*, 609 F.2d 152, 155 (5th Cir. 1980) ("a district judge who reviews the record of the hearing before the magistrate and adopts the magistrate's recommendations need not conduct a new hearing."). In contrast, a district court's discretion to *reject* a finding of the magistrate is limited where:

> (1) the finding is based on the credibility of the witnesses the magistrate heard, and (2) the finding is dispositive of an application for post-conviction relief involving the constitutional rights of a criminal defendant.  In *Blackburn* [the Fifth Circuit] held that in such circumstances the district judge cannot reject the finding without personally hearing live testimony from the witnesses whose testimony is in issue.

*Jordan v. Hargett*, 34 F.3d 310, 313 (5th Cir. 1994), *on reh'g en banc*, 53 F.3d 94 (5th Cir. 1995); *see also Scribner*, 832 F.3d at 259 (explaining that a district judge may not reject the credibility finding of a magistrate judge without holding an evidentiary hearing); *Garcia v. Boldin*, 691 F.2d 1172, 1179 n.13 ("Where the district judge makes material credibility choices

*at variance* with those of the magistrate, the judge must, at least in certain cases, have a hearing at which he or she personally hears the testimony."); *Blackburn*, 630 F.2d at 1110 ("If the district judge doubts the credibility determination of the magistrate, only by hearing the testimony himself does he have an adequate basis on which to base his decision.").

Having made a *de novo* review of the record, including the transcript of the evidentiary hearing, the court is of the opinion that the Magistrate Judge's credibility determinations are correct. The crux of the issue on remand is whether Schulte was ineffective for not consulting an expert witness in order to determine whether the evidence supported a claim that Diamond's prescriptions were the cause of death of his patient T.H. For this § 2255 proceeding, Diamond retained Thomas as an expert who opined that T.H.'s death was most likely heat-related and not caused by Diamond's prescriptions as, in her opinion, there was no oxycodone found in her blood and the level of morphine found was not at a lethal limit. Thomas hinged her opinion on the email from the Government's expert, Stacey Hail ("Hail"), but failed to mention that Hail herself questioned whether the toxicology report tested negative for oxycodone or if the assay itself was unable to detect oxycodone. At the hearing, Thomas testified that because an empty bottle of oxycodone was found in close proximity to T.H. she "presumed" that they tested for oxycodone, and that none was found in her system. Thomas made no effort to inquire into this discrepancy observed by Hail in her email and failed to even mention it until pressed on it by the Government. Further, when Thomas testified that T.H.'s morphine level was too low to be considered lethal, Thomas failed to consider the fact that T.H. was detained for some time before her death and that her tolerance level would have been much lower. In making her assessment that there was no medical basis to support an overdose, Thomas overlooked the fact that pink,

frothy sputum was found on T.H. which is highly indicative of a drug overdose and ignored the fact that every medical professional who encountered T.H. that day treated her death as a drug overdose and not as a heat-related death.  Thomas also excluded from her affidavit the facts that the family parked the car in a shaded area and that the windows were rolled down, making it less likely that heat was an issue.  The record firmly establishes that Thomas excluded key historical facts in making her ultimate assessment that the evidence suggested T.H.'s death was heat-related.    In conclusion, the magistrate judge found much of Thomas's testimony to be implausible as she failed to consider or simply ignored substantial circumstantial and direct evidence that indicated T.H. suffered an overdose.

The record evidence supports Schulte's conclusion that there was no other legitimate explanation for T.H.'s death.  There is no question that both the prescriptions for morphine and oxycodone were prescribed by Diamond and both bottles were found by T.H. on the scene; the bottle of oxycodone was empty and the bottle of morphine was half empty.  T.H.'s family reported that she had been unresponsive during the entire drive from Texas to Oklahoma and that they left her in a shaded area for a period of time before calling EMS after finding her still unresponsive.  The record evidence shows that emergency responders treated her for a drug overdose after finding pill fragments and pink, frothy sputum upon suctioning.  Diamond, a medical doctor himself, never raised any concern to Schulte that T.H.'s death was heat-related and never raised any concern to Schulte about Hail's email.  Schulte reasonably assessed that the presence (or absence) of oxycodone in the toxicology report was not as important with respect to T.H.'s death because Diamond was the only doctor prescribing oxycodone and morphine.  "[T]here is no bright-line rule requiring toxicology reports or expert testimony to prove but-for

causation in every case that involves a drug overdose." *Cockrell v. United States*, No. 4:14cv175, 2017 WL 1088339, at *2 (E.D. Tex. Mar. 22, 2017) (citing *Burrage v. United States*, 571 U.S. 2014, 218-19 (2014)). Finally, upon his own review of the medical records, Diamond ultimately admitted to Schulte that he did not have a legitimate medical reason to prescribe the combination of drugs to T.H., thus admitting his guilt. Schulte testified that it was at this point that Diamond agreed to take the plea deal for 20 years, after pressing for a 10-year deal. A court must "reconstruct the circumstances of counsel's challenged conduct and [evaluate] the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 691. "[S]trict adherence to the *Strickland* standard [is] essential when reviewing the choices an attorney made at the plea bargain stage." *Premo v. Moore*, 562 U.S. 115, 125 (2011).

In light of the foregoing, the court accepts the magistrate judge's finding that Schulte was more credible than Thomas. Diamond does not request a new evidentiary hearing and the court finds no reason to conduct an independent hearing in this case. Furthermore, to the extent Diamond's objections rest on the contention that the magistrate judge's credibility findings are erroneous, the objections lack merit and are overruled. The court accepts the finding by the magistrate judge that Diamond failed to establish ineffective assistance of counsel.

### B.    **Prejudice**

Diamond continues to insist in this § 2255 proceeding that he would have chosen to go to trial with competent advice. To show prejudice in the context of a guilty plea, Diamond must establish "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59

(1985). However, a movant's allegation that he would not have pleaded guilty must be *reasonable*. *Armstead v. Scott*, 37 F.3d 202, 210 (5th Cir. 1994) (emphasis added).

Although Diamond claims that he would not have pleaded guilty but for Schulte's allegedly deficient performance, he has failed to demonstrate that it would have been *objectively reasonable* to do so. As outlined by the magistrate judge, there was strong evidence of Diamond's guilt. Diamond's entry into the plea agreement allowed him to plead guilty to one death and receive a three-level reduction for acceptance of responsibility. In accepting the plea agreement, he avoided additional sentencing exposure related to the six additional deaths. Pursuant to the plea agreement, Diamond received 240 months on Count 1 and 120 months on Count 9, with each term running concurrently. Diamond received the statutory minimum under the plea agreement. And, as outlined by the magistrate judge, if Diamond rejected the plea agreement and proceeded to trial, he would have lost acceptance of responsibility and automatically faced a sentence greater than the 20-year statutory minimum even with just one death. Moreover, if Diamond had proceeded to trial and had been convicted on all counts, the total offense level would have been 42, producing a guideline imprisonment range of 360 months to life imprisonment on Counts 1 through 8; Counts 9 through 21 would have been capped at 120 months imprisonment. The contemporaneous evidence demonstrates Diamond's desire to plead guilty. This is supported by Schulte's testimony at the evidentiary hearing that Diamond had been pressing for a 10-year minimum sentence which Schulte told Diamond he could not get. *United States v. McClinton*, 782 F. App'x 312, 314 (5th Cir. 2019) (per curiam) ("[C]ontemporaneous evidence is the key." (Quotation omitted)). That Diamond would reject a 20-year statutory minimum sentence and gamble with the exposure to a potential life sentence

is not reasonable as the evidence against Diamond was substantial. *See United States v. Massenburg*, 564 F.3d 337, 344 (4th Cir. 2009) (noting that when the case was a "strong one" the court "can legitimately question what [petitioner] would have to gain by going to trial."); *accord Armstead*, 37 F.3d at 210-11 ("Armstead has not shown that even in light of the strong evidence against him, there is a reasonable probability that he would not have plead guilty and that he would have insisted on going to trial."). Diamond has simply failed to show a reasonable probability that absent counsel's alleged deficiencies, he would not have pled guilty and would have insisted on proceeding to trial. The court accepts the finding by the magistrate judge that Diamond has failed to satisfy the prejudice prong of *Strickland*.

### ORDER

Accordingly, Movant's Objections are **OVERRULED**. The findings of fact and conclusions of law of the magistrate judge are correct, and the report of the magistrate judge is **ADOPTED**. A certificate of appealability is denied as recommended by the magistrate judge. A final judgment will be entered in accordance with the recommendation of the magistrate judge.

SIGNED at Beaumont, Texas, this 1st day of May, 2026.

_____
MARCIA A. CRONE
UNITED STATES DISTRICT JUDGE